UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ANTHONY JOSEPH WILLIAMS         CIVIL ACTION NO. 09-cv-0892

VERSUS                           JUDGE HICKS

JEREMY WALLACE, ET AL            MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Anthony Joseph Williams ("Plaintiff") is an inmate housed at the David Wade Correctional Center. He alleges in his pro se complaint that four corrections officers violated his Eighth Amendment right to be free of cruel and unusual punishment because they failed to protect him from an attack by a fellow inmate. Defendants Jeremy Wallace, Timothy Williams, and Bruce Solomon have filed a Motion for Summary Judgment (Doc. 25) that is now before the court. Defendant John Paranuk did not join the motion, as he has not been served. The Marshal attempted to serve Paranuk through the Department of Corrections (pursuant to an agreement between the court and the DOC for service of current DOC employees), but service was returned unexecuted, along with a note that Paranuk had resigned. It is recommended, for the reasons that follow, that the motion be granted and that the claims against Paranuk also be dismissed.

**Failure to Protect**

Prison officials have a duty under the Eighth Amendment to protect inmates from violence at the hands of other prisoners. Farmer v. Brennan, 114 S.Ct. 1970 (1994); Horton

v. Cockrell, 70 F.3d 397, 400-01 (5th Cir.1995). However, not every injury "by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 114 S.Ct. at 1977. To establish a failure-to-protect claim, the plaintiff must show that he was detained "under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." Neals v. Norwood, 59 F.3d 530, 533 (5th Cir.1995). "In order to act with deliberate indifference, the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference. Id., citing Farmer.

**Analysis**

    **A. The Allegations**

Plaintiff alleges in his complaint that he completed a stay on suicide watch and was told by Captain Williams that he was being moved to B-tier, cell number 2. Plaintiff alleges that he notified Williams that he had several known enemies on that tier, particularly inmate John Poullard; Plaintiff told Williams that Poullard had attacked him in the past. Williams allegedly responded that the decision had been made by the Major. Plaintiff said he refused to go, and Williams said he was not going to drag Plaintiff there because his shift was almost at an end.

Plaintiff alleges that, after the shift change, Captain Solomon came to his cell, and Plaintiff informed him of his complaint about the cell assignment. Solomon said that he would talk to Major Wallace. He later returned and told Plaintiff that Major Paranuk,

Captain Williams, and Major Wallace agreed to put Plaintiff on B-tier because they did not want him on D-tier near Paul Landry, a homosexual inmate (who Plaintiff alleges was merely his friend from before they entered prison). Plaintiff alleges that he personally talked to Major Wallace as he was being transferred, and Wallace said he would rather deal with any problems on B-tier rather than place Plaintiff on D-tier.

Plaintiff alleges that he was placed inside his new B-tier cell. Soon afterward, Lt. Hamilton let John Poullard out of his cell for a shower. Poullard began tearing down the covers of light fixtures and removed fluorescent bulbs. He came to Plaintiff's cell and burst the bulbs by smashing them against the cell door, which allegedly sent a shower of glass fragments into the cell. Poullard then retrieved a bag of human feces. Plaintiff used his mattress as a shield as Poullard tried to hit him with the bag of feces and two more light bulbs. Poullard was eventually subdued by a tactical team. Plaintiff alleges that he was treated by Nurse Lee for glass in his right eye.

### B. Summary Judgment Rules

The facts recited above come from Plaintiff's complaint. Defendants have in this case responded to the complaint by challenging its allegations with affidavit testimony. In the face of a properly supported motion for summary judgment, a plaintiff cannot rest on the mere allegations in his complaint. See King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

Summary judgment is proper when the movant can demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. All facts and inferences must be construed in the light most favorable to the non-movant. Kirschbaum

v. Reliant Energy, Inc., 526 F.3d 243, 248 (5th Cir. 2008). But where the non-moving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist. McLaurin v. Noble Drilling (US) Inc., 529 F.3d 285, 288 (5th Cir. 2008).

### C. Summary Judgment Evidence

Defendants Wallace, Solomon, and Williams have squarely challenged key allegations in the complaint with detailed affidavits from themselves and others. Assistant Warden Ray Hanson testifies that Plaintiff was initially transferred to David Wade from Winn Correctional Center in September 2003. Inmate John Poullard was already housed at David Wade, arriving there in 2001. Plaintiff and Poullard were both classified as maximum security level inmates with that classification being housed on the south compound in the N-4 housing unit.

Assistant Warden Hanson reports that there was an incident between Plaintiff and Poullard in January 2005, about two and one-half years before the incident at issue in this case, but there were no prior or subsequent incidents between the two inmates until the 2007 incident at issue here. Hanson testifies that Plaintiff and Poullard have, on numerous occasions since the January 2005 incident, been located on the same tier and housed in the same housing unit without incident. Hanson adds that Plaintiff has never expressed any protection concerns regarding problems with Poullard or any other inmate. Hanson and the other Defendants each testify about a policy that directs inmates with protection concerns to

file a written request for protective custody, and each affiant denies that Plaintiff ever filed such a request.

Captain Timothy Williams (a defendant) testifies that he told Plaintiff that Plaintiff would be transferred from C-tier, where Plaintiff had recently been on suicide watch, to the B-tier of the N-4 housing unit. Williams testifies that Plaintiff did not tell him that he had any known enemies on B-tier or that Plaintiff had experienced a prior physical altercation with inmate Poullard. Plaintiff alleged in his complaint that Williams made a number of statements to him about the transfer, but Williams squarely denies making any such remarks.

Captain Bruce Solomon (a defendant) testifies that he and two other officers escorted Plaintiff from C-tier to cell number 2 on the B-tier of the N-4 housing unit. Plaintiff was securely confined in the cell, and the cell bars were locked. Solomon testifies that Plaintiff did not express to him any protection concerns regarding problems with Poullard or any other inmate. Solomon flatly denies Plaintiff's allegations that he told Plaintiff that he had a conversation with other officers about a relationship between Plaintiff and inmate Paul Landry (the homosexual inmate).

Major Jeremy Wallace (a defendant) testifies that he began his shift at 6:00 o'clock on the evening of the transfer and was informed of the transfer. He denies having any conversation with Plaintiff before the transfer, and he denies that Plaintiff expressed any protection concerns to him regarding problems with Poullard or any other inmate.

Christopher Hamilton, who is not a defendant, testifies that he was overseeing the general operations of the N-4 unit on the day of the incident. He helped escort Plaintiff to

cell number 2, where Plaintiff was secured behind locked doors. Afterward, Hamilton saw on the "shower sheet" that inmate Poullard was the next offender scheduled to shower. A policy memorandum provides that each offender on the tier will be allowed out of his cell once daily for a shower. Inmates are not released from their cell without restraints in at least handcuffs and leg irons except when they are released for shower or exercise. Also, no more than one offender is let out of his cell on the tier at any time. Consistent with that policy, Hamilton opened Poullard's cell doors to allow him to shower. Poullard, rather than go to the shower area, began to pace up and down the tier. Hamilton became aware of this when he heard the breaking of the light bulbs and Poullard's loud voice. He saw Poullard throw the plastic bag of what was later learned to be human feces. Hamilton testifies that the contents of the bag made contact with the mattress and walls of cell number 2, and not to the person of Plaintiff. Hamilton also denies that Plaintiff ever expressed any protection concerns to him about Poullard or any other inmate.

Nurse Grace Lee testifies that she responded to the unit after the incident. She saw Poullard in a restraint chair, and she examined Plaintiff, who denied any feces getting on him but complained of glass in his eye. Nurse Lee noted multiple scratches to the right side of Plaintiff's face near and over his right eye, but she did not observe an injury in the eye. She flushed Plaintiff's eye and, when he still complained, transported him to the infirmary for evaluation. Once again, no eye injury was noted. Medication was administered, and additional medication was ordered. The scratches were cleaned with saline and antibiotic ointment.

Sgt. Latoria Harris testifies that she assisted Nurse Lee by holding Plaintiff's right eye open and flushing it with water to remove any foreign objects. Harris testifies that she did not see any glass in Plaintiff's eye or hear him complain that any foreign objects remained in his eye after it was flushed with water.

### D. Summary Judgment is Appropriate for All Defendants

The summary judgment evidence submitted by the movants contests every essential allegation in Plaintiff's complaint, shifting the burden to Plaintiff to create a genuine issue of material fact. Plaintiff's memorandum in opposition to the motion for summary judgment is not accompanied by any competent summary judgment evidence. Plaintiff merely makes unsworn assertions that Poullard has a history of violence and that corrections officers had gone "out of their way" to keep the two separated, whether on the yard, at medical call-outs, or otherwise. Plaintiff's submission, though not competent evidence, actually serves to undermine the assertion that prison officials were deliberately indifferent to danger posed by Poullard.

Plaintiff has not responded with any competent evidence, so the facts presented by the movants now control. Those facts do not permit a reasonable person to conclude that prison officials were deliberately indifferent to Plaintiff's need for protection. There is no competent evidence that Plaintiff complained of his fear of Poullard, and the evidence shows that Plaintiff was locked in a cell so that there was always a set of bars between Poullard and Plaintiff. Poullard managed to throw feces into Plaintiff's cell (but not hit Plaintiff) and

strike Plaintiff in the face with bits of broken glass. The injuries required only minor medical attention to scratches of the skin.

Each of the movants is entitled to summary judgment under Farmer's demanding deliberate indifference standard. The same is true with respect to defendant John Paranuk, who has not yet been served with the complaint and required to appear. The undersigned recommends, sua sponte, that the court enter judgment in favor of Paranuk as well. There is nothing in the summary judgment record to suggest any possibility that Plaintiff has a viable claim against Paranuk. The objections period that follows this recommendation will satisfy the notice requirements of Fed. R. Civ. Proc. 56.

Accordingly,

**IT IS RECOMMENDED** that the **Motion for Summary Judgment (Doc. 25)** be **granted** and that all claims against defendants Jeremy Wallace, Bruce Solomon, and Timothy Williams be **dismissed with prejudice**.

**IT IS FURTHER RECOMMENDED** that summary judgment be **granted** sua sponte for defendant John Paranuk, and that all claims against him be **dismissed with prejudice**.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another

party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 10th day of June, 2010.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE